# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE VALDES, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTURY 21 REAL ESTATE, LLC,<br><br>Defendant. | Civ. No.: 2:19-05411<br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Jorge Valdes brings this putative class action against Defendant Century 21 Real Estate, LLC ("Century 21") for violating the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq*. Now before the Court is Century 21's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is **DENIED**.

### I. BACKGROUND

Plaintiff Jorge Valdes is a California resident. Am. Compl. ¶ 2, ECF No. 11. Defendant Century 21 is a New Jersey national real estate franchise with over 8,000 franchised locations. *Id.* at ¶¶ 1, 5. Century 21's realtors are affiliated with franchised locations. *Id.* at ¶ 2. Valdes alleges that Century 21 realtors market realty services on behalf of and at the direction and control of Century 21. *Id.* Valdes alleges that Century 21 controls realtors' marketing by means of its training programs through which Century 21 directs realtors to (1) buy leads associated with real estate listings that have expired or otherwise been removed from multiple listing services, and (2) cold call those leads using an autodialer without consent. *Id.* at ¶¶ 2, 8-22. Specifically, Valdes alleges that Century 21 uses the Century 21 Workbook, Century 21 University, a preferred vendor program, Century 21 coaches, and annual seminar retreats to institute its marketing plan. *Id.*

On February 8, 2010, Plaintiff Valdes registered his cellular phone number on the do not call list. *Id.* at ¶ 23. Valdes alleges that between May 17, 2018 and October 29, 2019, he received twelve unsolicited, autodialed phone calls from Century 21 realtors soliciting Valdes to list his property with them. *Id.* at ¶¶ 24-33. Plaintiff filed a three-count class action complaint for violation of the TCPA and the TCPA's implementing regulation,

47 C.F.R. § 64.1200. *Id.* at ¶ 40-57. In each count, Valdes alleges that Century 21 is "vicariously liable for its realtors' calls because it directed, appeared to direct, and/or ratified the realtors' actions." *Id.* at ¶¶ 43, 49, 56. Now before the Court is Century 21's motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 14.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "But [courts] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James*, 700 F.3d at 679 (citations omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

To assert a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the defendant: (1) called her cell phone; (2) using an automatic telephone dialing system ("ATDS"); (3) without her prior express consent. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012) (citing 47 U.S.C. § 227(b)(1)(A)). Section 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c). Section 64.1200(c) of the TCPA's implementing regulations, provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

Century 21 argues that Valdes fails to state a claim under 47 U.S.C. § 227(B)(1)(A)(iii) because he fails to allege that any of the twelve calls he received were made using an automatic telephone dialing system. Century 21 argues that Valdes fails to state a claim under 47 C.F.R. § 64.1200(d) because: (1) Valdes does not allege that he received calls on his residential telephone line; (2) Valdes pleads with insufficient factual detail that he notified callers that he was on the do-not-call list; and (3) Valdes does not allege any facts suggesting that subsequent calls he received after requesting to be placed on the do-not-call list were from the same franchisee or business entity as those calls he received prior to that request. Valdes appears to assert only that Century 21 is vicariously liable for violating the TCPA, not that it is directly liable. *See* Am. Compl. ¶¶ 43, 49, 56; Def's Reply, ECF No. 16, at 2 n. 1.

### A. Autodialer Claim

To state a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A), a plaintiff must plausibly allege, among other things, that he was called on his cellular telephone number using an autodialer. At this stage of the proceedings, a TCPA plaintiff sufficiently alleges that calls were made using an autodialer by identifying "circumstances surrounding" the calls that "create a plausible inference of autodialing," including: their "commercial" content; that multiple calls were made to the same recipient; and that they were made without the recipient's consent. *See Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070, at *12 (S.D. Fla. Nov. 9, 2015); *Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017); *Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 U.S. Dist. LEXIS 6204, at *10-12 (N.D. Ill. Jan. 20, 2016).

Here, Plaintiff alleges with regard to the calls he received marketing Century 21 realty services that they were commercial, that he received multiple similar calls, they were made without Plaintiff's consent notwithstanding his having previously demanded that realtors marketing Century 21 realty services stop calling him, and that other consumers received similar calls under similar circumstances. Am. Compl. at ¶¶ 23-31. Generally, these factors have been held to be insufficient indicia indicating an autodialer was used. *See Montinola v. Synchrony Bank*, CV. 17-8963, 2018 WL 4110940, at *3 (D.N.J. Aug. 28, 2018) ("For example, Plaintiff does not provide any factual allegation as to whether there was a pause at the beginning of the call, whether the voice on the other end sounded robotic, or whether the calls all came from the same number."). Plaintiff also alleges that two of the realtors that called him stated that they obtained Plaintiff's telephone number from RedX, which is a company that sells lists of leads that are configured to be loaded into a number of different autodialers that have the capacity to store and automatically dial all of the numbers from the list without human intervention, and that dial multiple numbers from the list at the same time, and Century 21's realtors have been trained in the use of autodialers.

3

*Id.* at ¶¶ 27-28, 30. Thus, Valdes' autodialer TCPA claim is facially plausible and Century 21 is sufficiently on notice.

### B. Internal Do Not Call Claim

The TCPA prohibits solicitous calls to cell phone and landline numbers by or on behalf of a company that does not implement sufficient policies and procedures for maintaining an internal list of consumers that have requested not to be called—an internal do not call list. *See* 47 U.S.C. § 227(c)(5) (establishing a private right of action for violations of 47 C.F.R. §§ 64.1200(c) and (d); 47 C.F.R. §§ 64.1200(d)(1)-(6) (identifying requirements for internal do not call list policies and procedures).

#### 1. Residential Number

Century 21 argues that Plaintiff fails to allege an internal do not call list claim because Plaintiff does not allege that his cellular telephone number was a "residential" number. *See* 47 C.F.R. § 64.1400(d)(3) (specifying "residential subscriber"). Plaintiff pleads that he "registered his cellular phone number on the DNC" and that his "cellular phone number is not associated with a business." Am. Compl. at ¶ 23. In a 2003 Report and Order, the FCC made clear that, under the TCPA, wireless telephone subscribers should be presumed to be "residential subscribers." *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 at ¶¶ 33-36 (F.C.C. 2003); *id.* at Appendix B, ¶ 29 ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."). Century 21 argues that this presumption should only be construed to apply to the request to be placed on the do-not-call list and that further proof of residential status may be required if enforcement action is taken. *Id.* at ¶ 36 n. 139 ("Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should be need to take enforcement action."). The Court finds that in light of the FCC guidance stating that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections," it is sufficient under Rule 12(b)(6) that Valdes has alleged that his cellular telephone number was not used for a business purpose. *Id.* at ¶ 36.

#### 2. Sufficiency of Internal Do Not Call Claim

Pursuant to subsection (5) of 47 C.F.R. 64.1200(d), "a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the

product being advertised." Century 21 contends that Valdes does not allege any facts supporting a conclusion that any subsequent calls he received were from the same franchisee or business entity as the calls he received prior to requesting to be placed on the do-not-call list. It is sufficient that Valdes alleges that he received two or more calls on behalf of Century 21 more than 30 days after he told Century 21 realtors that he did not want to receive calls marketing Century 21 realty services. Am. Compl. ¶¶ 25, 29. Whether or not the calls were *on behalf of* Century 21 goes to whether or not an agency relationship existed between Century 21 and its franchisees.

### C. Agency Relationship Between Century 21 and Franchisees

Three theories of agency may support vicarious liability in the TCPA context: (1) actual authority; (2) apparent authority; and (3) ratification. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (citing *In re DISH Network, LLC*, 28 F.C.C.R. at 6950, n. 124). Century 21 contends that Valdes fails to sufficiently allege any facts that would plausibly give rise to vicarious liability against Century 21.

#### 1. Actual Authority

"Actual authority is the authority that a principal expressly or implicitly gives an agent." *United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *Lind v. Schenley Indus.*, Inc., 278 F.2d 79, 85 (3d Cir. 1960) ("'Actual authority' means, as the words connote, authority that the principal, expressly or implicitly, gave the agent."); *see Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017). An agent acts with actual authority if it "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. For a TCPA claim, a plaintiff sufficiently pleads that a defendant directed a realtor's calls by alleging that the caller "expressly mentioned" the defendant "by name"; that the defendant had the authority to "revise[]" call "scripts" or provide feedback regarding calls; that the defendant had the authority to "provide[] lead lists"; that the defendant was "aware" that an autodialer was being used; and/or other facts giving rise to an inference that the defendant was "heavily involved" in the "sales practices and marketing procedures." *United States v. Dish Network LLC*, 256 F. Supp. at 922-923 ("The fact that Dish may rarely have exercised these indicia of authority to control does not matter. The issue for purposes of agency analysis is the existence of the authority, not the actual use of the authority.").

Plaintiff alleges that Century 21 was heavily involved in realtors' unsolicited calls. Am. Compl. at ¶¶ 2, 8-22, 25-28. Valdes contends that through the its training techniques, Century 21 in effect directed realtors to solicit business for Century 21's and the realtors' common benefit by purchasing lists of leads associated with expired listings and similar properties and calling them repeatedly with an autodialer. Century 21 allegedly instructed realtors on how frequently to make calls and on what to say during calls: to identify

5

themselves as calling on behalf of Century 21, to offer the Century 21 pledge, and to solicit expired listings. Century 21 also allegedly facilitated realtors' access to lead lists and autodialers. Valdes has pleaded with sufficient specificity that Century 21 is vicariously liable based on an actual authority theory.

### 2. Apparent Authority

Apparent authority "arises when a third-party reasonably believes that the . . . agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011); *see also Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510-11 (D. Md. Feb. 25, 2015) (citing *Kristensen*, 12 F. Supp. 3d at 1302, and concluding that "apparent authority" is "based on a reasonable person's perception of who authorized [making the call]").

Here, Plaintiff sufficiently pleads Century 21's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory, including that realtors identified themselves as calling from "Century 21" during calls, that Century 21 provided instruction regarding call content and frequency, and that Century 21 facilitated realtors' access to lead lists and dialers to call them with (*i.e.*, Century 21 knew or should have known of realtors' TCPA violations and accepted the benefits of their calls anyway). *See* Am. Compl. at ¶¶ 2, 8-22, 24-28.

## IV. CONCLUSION

For the reasons set forth above, Century 21's motion to dismiss, ECF No. 14, is **DENIED**.

/s/ William J. Martini

WILLIAM J. MARTINI, U.S.D.J.

**Dated: October 21, 2019**